IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CURTIS D. BRATTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:13–CV–421 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Curtis D. Bratton ("Bratton") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Bratton alleges that the ALJ failed to properly evaluate the opinion of a consultative physician, and that an additional consultative opinion submitted to the Appeals Council constitutes new, material evidence that should be considered by the Commissioner. I agree that the ALJ did not provide a sufficient explanation for the weight given to the medical source opinions, and further that evidence submitted to the Appeals Council is new, material and should be considered by the Commissioner. As such, I **RECOMMEND GRANTING IN PART** Bratton's Motion for Summary Judgment (Dkt. No. 13), **DENYING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 15), and reversing and remanding this case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation.

1

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Bratton failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Bratton filed for SSI and DIB on December 7, 2009, claiming that his disability began on January 30, 2009.[2] Administrative Record, hereinafter "R." 71, 79. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 87–88, 107–08. On April 24, 2012, ALJ Jeffrey Schueler held a hearing to consider Bratton's disability claim. R. 35–70. Bratton was represented by an attorney at the hearing, which included testimony from Bratton and vocational expert John Newman. R. 35–70.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Bratton's date last insured was December 31, 2013. R. 21. Thus, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

On May 25, 2012, the ALJ entered his decision analyzing Bratton's claim under the familiar five-step process,[3] and denying Bratton's claim for benefits. R. 18–34. The ALJ found that Bratton suffered from the severe impairments of degenerative disc disease of the lumbar spine, status post L2–L5 total laminectomies and partial medial facetectomies with a right L3 total medial facetectomy. R. 24. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 25. The ALJ further found that Bratton had the residual functional capacity ("RFC") to perform less than the full range of sedentary work. R. 25. Specifically, the ALJ found that Bratton can lift and/or carry 10 pounds; can stand and/or walk for 2 hours and sit for 6 hours in an 8 hour workday; must have a sit/stand option every 60 minutes; can occasionally push, pull, balance, stoop, climb stairs/ramps, and operate foot controls; can never crawl or climb ladders, ropes, or scaffolds; can frequently reach overhead, handle, finger and feel; and must avoid even moderate exposure to vibration and all exposure to hazards. R. 25. The ALJ determined that Bratton could not return to his past relevant work, but that he could work at jobs that exist in significant numbers in the national economy, such as assembler, packer, and inspector/tester/sorter. R. 29. Thus, the ALJ concluded that he was not disabled.

Bratton requested that the Appeals Council review the ALJ's decision and submitted to the Appeals Council an additional opinion from a consultative physician, which the Appeals

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

Case 7:13-cv-00421-MFU-RSB   Document 21   Filed 02/09/15   Page 3 of 13   Pageid#: 415

Council made part of the record. R. 1–5, 348. On July 18, 2013, the Appeals Council denied Bratton's request for review (R. 1–5), and this appeal followed.

## ANALYSIS

Bratton alleges that the ALJ erred by failing to properly evaluate and explain the weight he gave to the opinion of consultative physician Robert B. Stephenson. Bratton further alleges that a second opinion from Dr. Stephenson, issued after the ALJ's decision and submitted to the Appeals Council, constitutes new, material evidence that warrants consideration by the Commissioner. Having reviewed the record as a whole, I agree with Bratton on both grounds, and recommend remanding this case to the Commissioner under sentence four of 42 U.S.C. § 405(g).

**Consultative Physician's Opinion**

Bratton, a 48 year old construction worker, began having back pain in 2009, and on November 5, 2009, underwent a total laminectomy and partial medial facetectomies at L2 through L5, with a total medial facetectomy at right L3, to treat lumbar stenosis. R. 272–74. Bratton had a follow up MRI of his lumbar spine in January 2010, which looked "significantly better than his preoperative study." R. 297. However, Bratton continued to complain of back pain after the surgery, with radiation into his legs. R. 277, 298, 336–39. He was referred to physical therapy, prescribed a back brace, and given pain medication. R. 277, 298, 336–39. Bratton stopped working in mid-2010. R. 46. On December 9, 2010, his treating physician at the Free Clinic of Pulaski recommended that Bratton undergo another surgery, which Bratton declined. R. 337. Bratton continued to seek treatment for chronic back pain through April 2012. R. 334, 337–40.

4

The record includes several medical opinions with regard to Bratton's functional limitations. On May 21, 2010, state agency medical consultant Luc Vinh reviewed Bratton's medical records and found that he was capable lifting/carrying ten pounds frequently, and twenty pounds occasionally; sitting 6 hours in an 8 hour workday, and had no limitation in his ability to push and pull. R. 74–75. Vinh found that Bratton could occasionally climb ramps, stairs, ladders, ropes and scaffolds, and occasionally balance, stoop, kneel, crouch and crawl. R. 75. On August 24, 2010, state agency physician Richard Surrusco, M.D., agreed with Vinh's findings, with the added limitation that Bratton should avoid concentrated exposure to vibration, and even moderate exposure to hazards. R. 93–95.

On December 7, 2011, Bratton underwent a consultative examination with William Humphries, M.D. R. 322–32. On examination, Dr. Humphries noted that Bratton had a mildly reduced range of motion in his neck with tenderness of his posterior cervical spine, and moderately reduced range of motion in his back, with tenderness to palpation in his thoracic and lumbar region, but no spasm. R. 323. He had a negative straight leg raising test, with lumbar discomfort. R. 323. He also had mildly reduced joint range of motion in both hips, a mildly antalgic gait on the right, and normal strength in his lower extremities. Dr. Humphries diagnosed degenerative disc disease, possible degenerative joint disease, and ongoing chronic lumbar strain. R. 325. Dr. Humphries found that Bratton was capable of sitting 6 hours in an 8 hour workday, standing and walking 6 hours in an 8 hour workday, lifting 50 pounds occasionally and 25 pounds frequently, and occasional climbing, kneeling, crawling, stooping and crouching. R. 325.

On April 17, 2012, Robert Stephenson, M.D. preformed a consultative evaluation of Bratton. R. 342–45. Dr. Stephenson noted diffuse tenderness of Bratton's low back region, with significant muscle spasm along the lumber paraspinal muscles. Bratton had limited low back

5

range of motion, with pain. Dr. Stephenson noted full range of motion of all joints in Bratton's lower extremities, intact motor and sensory examination in his lower extremities, and a positive straight leg raising test on the right side at 70 degrees. R. 344. Dr. Stephenson found that Bratton could not perform a single leg stance on his right lower extremity, and was unable to walk on toes or heels due to increased low back pain. Bratton also walked with a limp. R. 344. Dr. Stephenson's impression was chronic low back pain, likely related to underlying degenerative changes. Dr. Stephenson found that Bratton was capable of standing or walking 1–2 hours in an 8 hour workday; and sitting 4–6 hours in an 8 hour workday, as long as his right leg was elevated. Dr. Stephenson limited Bratton's carrying and lifting to 2–3 pounds frequently and 5–10 pounds occasionally. He found that Bratton can never bend, stoop and crouch, and can never use his arms above shoulder height. He further found that Bratton should limit his exposure to cold and damp environments and vibrations. Bratton also should avoid climbing or ladders or repetitive use of stairs or unprotected heights. R. 345.

Approximately five months later, after the ALJ's decision denying benefits, Dr. Stephenson submitted a second opinion clarifying the restrictions on Bratton's functional capacity, based upon his prior consultative examination. R. 348. Dr. Stephenson stated that Bratton would have 2–3 days per week when he would be limited to standing or walking 1 hour total in an 8 hour workday, and sitting 4 hours in an 8 hour workday. He further noted that Bratton would need to elevate his right leg to waist level for 4 hours in an 8 hour workday. R. 348.

In his decision denying benefits, the ALJ discussed Bratton's treatment records and allegations of pain in detail. The ALJ then provided a cursory, one paragraph statement with regard to the medical opinion evidence. Specifically, the ALJ stated:

6

> The undersigned places some weight on the opinions of the State agency medical consultants and Dr. Humphries, particularly with regard to the claimant's ability to sit and some of his non-exertional limitations. Greater weight is placed on the opinion of Dr. Stephenson, but not all of his opinion is adopted by the undersigned. Although the medical evidence of record supports some of the medical opinion of Dr. Stephenson (e.g., Ex. 6F at 2; Ex. 7F at 6), the medical evidence of record does not support all of his opinion, particularly his opinion regarding the claimant's inability to consistently work a full 8-hour workday.

R. 28. There is no further explanation in the ALJ's decision for the weight given to any of the medical source opinions.

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. See Hays v. Sullivan, 907 F.2d 1452, 1456 (4th Cir. 1990); Taylor v. Weinberger, 528 F.2d 1153, 1156 (4th Cir. 1975). An ALJ may not reject medical evidence for no reason or for the wrong reason, see King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980); however, an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Additionally, an ALJ is required to consider and address medical source opinions in the RFC assessment and to explain why any opinion conflicting with the RFC assessment was not adopted. SSR 96-8p, 1996 WL 374184, at *7. "The ALJ is obligated to both identify specific evidence from the medical opinions that he found inconsistent with the medical evidence as a whole, and also to explain 'the reasons for his findings, including the reason for rejecting relevant evidence in support of the claim.'" Lewis v. Colvin, Civ. Action No. CBD-11-1423, 2013 WL 6839505, at *5 (D. Md. Dec. 23, 2013) (citing King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980)).

7

Here, the ALJ did not sufficiently explain his rationale with regard to the weight he afforded the medial opinion evidence. The ALJ provided some weight to the opinions of the state agency consultants and Dr. Humphries, but provided no indication as to what "some" weight equals. The ALJ also failed to provide any reasoning to support his decision to give those opinions "some" weight.

The ALJ provided "greater" weight to the opinion of Dr. Stephenson, with the caveat that "not all of his opinion is adopted by the undersigned," and "the medical evidence of record does not support all of his opinion, particularly his opinion regarding the claimant's inability to consistently work a full 8-hour workday." R. 28. The ALJ's decision fails to specifically state which portions of Dr. Stephenson's opinion he is giving "great" weight and which portions he is discrediting.

The Commissioner asserts that the court can determine which portions of Dr. Stephenson's opinion were adopted or rejected by the ALJ by comparing Dr. Stephenson's opinion with the RFC. This task is not so simple. Several of the limitations assessed by Dr. Stephenson, such as Bratton's need to elevate his right leg and avoid use of his arms above shoulder height, are not addressed in the RFC or anywhere else in the ALJ's opinion. Further, while the court can trace some of the limitations in the RFC to Dr. Stephenson's opinion (e.g., restrictions on lifting, carrying, standing and walking) and some of the limitations to the opinions of Dr. Humphries and the state agency physicians (e.g., occasional balancing, stooping, climbing stairs, and using foot controls); the RFC includes provisions that are not found in any of the medical source opinions, such as the 60 minute sit/stand option, and ability to frequently reach overhead and handle. Thus, the Commissioner's suggested approach requires the court to speculate as to the basis for each of the provisions in the RFC.

8

Further, even if the court could determine which portions of Dr. Stephenson's opinion the ALJ adopted, the court is still left with an insufficient explanation as to why the ALJ made that determination. The only reason given by the ALJ for those portions of Dr. Stephenson's opinion that he is rejecting is that they lack support in the record. This type of general statement, without explanation, is insufficient to support an RFC determination. See Lewis v. Colvin, 2013 WL 6839505, at *5 (An ALJ's conclusion that a physician's opinion "is not entirely consistent with the medical evidence as a whole," without more, is insufficient to support his RFC findings); Pearson v. Colvin, 4:12-CV-23-FL, 2013 WL 3243550, at *4 (E.D.N.C. June 26, 2013) (An ALJ's conclusion that an opinion was "out of proportion to the longitudinal and objective record" is merely conclusory and lacks any meaningful factual comparisons.) Additionally, the inherent contradiction in the ALJ's conclusion that Dr. Stephenson's opinion lacks support in the record, and yet deserves great weight, requires some additional explanation. See Warren v. Astrue, Civ. Action No. 2:08cv03, 2008 WL 3285756, at * 11 (W.D. Va. Aug. 8, 2008)("The ALJ's decision cannot be supported by substantial evidence when he fails to adequately explain his rationale for rejecting the opinions of those whom he otherwise gave great weight to in arriving at his decision.")

Given the lack of clarity in the ALJ's decision as to which opinions of Dr. Stephenson are afforded "greater" weight and which ones are rejected, as well as the lack of meaningful explanation for the treatment of Dr. Stephenson and the other physician's opinions, the court simply cannot say that substantial evidence supports the ALJ's decision in this case.

**Additional Evidence**

Bratton also argues the Appeals Council should have remanded this matter back to the ALJ for consideration of Dr. Stephenson's September 24, 2012 opinion. The Appeals Council

9

made Dr. Stephenson's additional report a part of the record, but found that it provided "no reason to review the Administrative Law Judge's decision." R. 1–6. When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id.

When the Appeals Council denied Bratton's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Wilkins, 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record, including the new evidence, to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If

10

such conflicts are not present, the case can be decided on the existing record without a remand. Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 F. App'x 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013)).

In this case, I find that Dr. Stephenson's additional report constitutes new, relevant, and material evidence, and thus it is appropriate to remand this case to the Commissioner to consider the evidence under sentence four of 42 U.S.C. § 405(g). Dr. Stephenson's additional report stated that approximately 2 to 3 days a week, Bratton would be limited to standing and walking 1 hour in an 8-hour workday, and sitting only 4 hours in an 8-hour workday. R. 348. Dr. Stephenson also clarified that Bratton would need to elevate his right leg to waist level for 4 hours in an 8-hour workday. R. 348.

Dr. Stephenson's additional report is "new" evidence, as it was obtained after the ALJ's decision in the case. Dr. Stephenson's additional report is not duplicative or cumulative of other evidence in the record because it clarifies his prior report and imposes additional restrictions on Bratton's physical functional capacity. Dr. Stephenson's additional report relates to the time period at issue in this case because it is based upon his examination of Bratton prior to the ALJ's decision.

I also find that Dr. Stephenson's additional report is material and there is a reasonable possibility that it may change the outcome of the ALJ's decision because it places additional restrictions on Bratton's functional capacity, which were not previously presented to the ALJ. As discussed above, the ALJ gave at least some provisions of Dr. Stephenson's opinion great weight. Given that the ALJ placed great weight on some portions of the medical opinion of Dr.

Stephenson, and the ALJ did not state specific reasons why he adopted or rejected specific portions of Dr. Stephenson's opinion, there is a reasonable possibility that these additional restrictions from Dr. Stephenson would change the outcome of this case.

My inquiry at this stage is to determine whether there is a reasonable possibility that the ALJ's decision would change upon consideration of this evidence. It may be that Dr. Stephenson's additional opinion does not alter the outcome of the ALJ's analysis. That decision does not rest with the Court, however, and as there is a sufficient probability that the additional evidence will change the outcome, the law requires that I recommend that the court remand the case. See, e.g., Burton v. Colvin, CA 4:11–03335–CMC, 2013 WL 3551120, at *3 (D.S.C. July 11, 2013) ("In light of the new evidence that appears to conflict with one or more critical bases in the ALJ's opinion, and the lack of explanation by the Appeals Council as to why that new evidence did not affect Plaintiff's disability determination, the court cannot say that the ALJ's decision is supported by substantial evidence.").

## **RECOMMENDED DISPOSITION**

For the reasons set forth above, it is recommended that Defendant's motion for summary judgment be **DENIED**, Bratton's motion for summary judgment be **GRANTED IN PART**, and this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the

parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

    Enter:  February 9, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge